176 N.J. Super. 626 (1980)
424 A.2d 473
FRED AND VONDELLE PLUSHANSKI, PLAINTIFFS,
v.
UNION TOWNSHIP, DEFENDANT.
Superior Court of New Jersey, Tax Court of New Jersey.
September 29, 1980.
*627 William A. Shurts for plaintiff (Felter, Cain & Shurts, attorneys).
J. Peter Jost for defendant.
*628 LASSER, P.J.T.C.
This matter involves the application of a rollback tax assessment on land located in Union Tp., Hunterdon County. The rollback tax was imposed by judgments of the Hunterdon County Board of Taxation, which judgments were contested by taxpayers.
Prior to 1976 taxpayers owned two parcels of vacant land, Block 4, Lot 5, containing approximately 13 acres, and Block 5, Lot 3, containing approximately 99 acres. These parcels were assessed as farmland pursuant to The Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq. In 1976 and 1978 plaintiffs subdivided and sold one lot from the 99 acre tract (Lot 3-1) and four lots from the 13 acre tract (Lots 5-2, 5-3, 5-4 and 5-5).
The change from farmland use of Lots 3-1, 5-2 and 5-3 occurred in 1976 and of Lots 5-4 and 5-5 in 1978. The parties stipulated that the provisions of N.J.S.A. 54:4-23.8, imposing rollback taxes, are applicable to these five lots for the year of change and for the two years preceding the year of change. The taxpayers question the valuation and assessment method employed by the assessor.
The assessor followed the four step rollback tax assessment procedure as set forth in N.J.S.A. 54:4-23.8. These steps are to ascertain:
(1) The full and fair value of such land under the valuation standard applicable to other land in the taxing district not assessed as farmland. This determination is referred to hereafter as "non-farmland value". Taxpayers' challenge of the rollback tax is principally directed to the assessor's determination of the non-farmland value.
(2) The amount of the land assessment for the particular tax year by multiplying the non-farmland value by the county percentage level as determined by the County Board of Taxation in accordance with § 3 of P.L. 1960, Chapter 51 (c. 54:4-2.27). Taxpayers also contend that a percentage level other than the county percentage level should be applied.
*629 (3) The amount of the additional assessment of the land for the particular tax year by deducting the amount of the actual assessment on the land for that year from the amount of the land assessment determined under (1) and (2) hereof; and
(4) The amount of the rollback tax for that tax year by multiplying the amount of the additional assessment determined under (3) hereof by the general property tax rate of the taxing district applicable for that tax year.
The taxpayers do not challenge the assessor's actions with respect to the third and fourth steps.
In 1972 the J.M. Cleminshaw Company conducted a revaluation of all properties located in Union Twp. The revaluation was adopted for the tax year 1973. Large unsubdivided tracts in Union Twp. were valued by Cleminshaw using the homesite approach. The homesite approach considers the potential building lots in a tract having the road frontage and area required by the township zoning ordinance as an element in the valuation of the entire tract. Cleminshaw determined the fair market value of each potential homesite and uniformly deducted a vacancy factor of 25% from the homesite value to adjust the value of the land to its existing undeveloped and unsubdivided state. Additional deductions were made if warranted by the topography of each homesite. A separate per acre value was assigned to all other land in the tract not having the road frontage and acreage necessary for homesite development. The value of homesite lots when added to the value of the other land resulted in the total non-farmland value of the tract for assessment purposes.
This appraisal method resulted in a non-farmland valuation of $42,250 for the 13 acre tract for the year 1973 (4 lots at $13,000 each less 25% or $39,000 plus $3,250 for backland). The 99 acre tract was also determined to have four lots meeting zoning requirements for separate lots at $13,000 per lot. The total non-farmland value of these four lots was $39,000 after the vacancy discount. The remaining backland was valued at $56,088, for a total non-farmland value for the year 1973 of $95,088.
*630 The tax assessor testified that he had used the homesite approach to determine the non-farmland value of the five subject lots as the first step in determining the rollback tax. He stated that this method was consistent with assessment procedures used for other vacant land in the taxing district. Taxpayers' expert valued these parcels at $26,500 and $198,000, respectively, solely on an acreage basis, using $2,000 per acre.
The assessor's figures and taxpayers' figures for the "non-farmland value" of the new lots are as follows:

 Taxpayers' value
 Rollback Years based on $2,000
Block Lot Area "Non-Farmland" Assessment per acre
 1976 1975 1974
5 3-1 1.844 ac. $14,000 $7,800 $7,800 $3,688
4 5-2 1.667 ac. $13,200 $7,800 $7,800 $3,334
4 5-3 1.666 ac. $13,200 $7,800 $7,800 $3,320
 1978 1977 1976
4 5-4 1.71 ac. $12,600 $9,450 $9,450 $3,428
4 5-5 1.65 ac. $12,500 $9,375 $9,375 $3,318

Although rollback taxes were assessed against the purchaser of the homesite lots, plaintiffs have assumed contractual liability for payment and have initiated this action.

I.
Taxpayers contend that the non-farmland value of the new lots should be determined by dividing the number of acres in the entire tract into the total non-farmland value and then multiplying the result by the number of acres undergoing the change in use. This method is hereafter referred to as the "proportional acreage" method. Taxpayers argue that the assessment was improper because it includes in the non-farmland value the value of homesite lots when no such lots actually existed on the assessing dates of the rollback years.
*631 The New Jersey Constitution, Article 8, § 1, ¶ 1(b) and the Farmland Assessment Act, N.J.S.A. 54:4-23.8, require a rollback tax on land assessed as farmland in the event of a change in use from farmland. This rollback tax is equal to the difference between the farmland tax and the tax that would have been paid had the land been valued, assessed and taxed as other land in the taxing district in the current tax year and in the two prior years in which the land was assessed as farmland. The assessor in calculating the farmland rollback tax used the same homesite valuation method to determine the assessment that would have been placed upon the homesite lots if the property had not been subject to farmland assessment.
Is the rollback assessment measured by the "proportional acreage" value of the property as contended by the taxpayers or by the full and fair value of the portion of the property undergoing the use change? Taxpayers maintain that valuation based on this potential use is improper and that the land must be valued in its actual state. It is clear that the standard of value mandated by N.J.S.A. 54:4-23 must be used on land subject to rollback tax. Schere v. Tp. of Freehold, 150 N.J. Super. 404 (App.Div. 1977). The highest and best use of the property must be considered in valuing land under N.J.S.A. 54:4-23. Hackensack Water Co. v. Boro. of Old Tappan, 77 N.J. 208, 213 (1978). The valuation of a farm in an area where farmland was being developed for residential lots under the general assessment standard of N.J.S.A. 54:4-23, was addressed in Division of Tax Appeals v. Ewing Tp., 72 N.J. Super. 238 (App.Div. 1962). The court dealt with the issue of whether the farm should be valued in its existing use as a farm or at its potential use for development as residential lots. The court held that N.J.S.A. 54:4-23 required the assessor to consider potential development value. The court stated:
The scope of an assessor's judgment as to the price which a property would bring at a fair and bona fide sale by private contract on the assessment date is not limited to the sale of a farm as a farm or a residence as a residence. Rather, the assessor must consider the possibility of sale to a buyer who intends a different use, unless such possibility is so remote as to have no real bearing upon current *632 value. This view is not in conflict with a principle... [citation omitted] that property to be assessed must be valued in the actual condition in which the owner holds it. Id. at 243.
Although this case was decided prior to the adoption of the Farmland Assessment Act, its application of the valuation standard of N.J.S.A. 54:4-23 continues to be relevant.
The opinion of value of taxpayers' expert using the proportional approach was based upon his general appraisal experience and one cited sale at $2,600 per acre. This method resulted in his valuation of the 99 acre tract at a value greater than that used by the taxing district and a value for the 13 acre parcel which was less than that used by the taxing district. It is likely that a sale of a 13 acre tract with four readily subdividable lots will yield a higher per acre value than the sale of a 99 acre parcel with four readily subdividable lots. Because no distinction was made between the per acre value of these large and small tracts, the valuation testimony was not convincing.
Even if the taxpayers had established the non-farmland value of the entire tract, the court finds that the value of the lots subject to rollback tax cannot be determined solely by a direct proportional allocation of the value of the entire tract. Consideration must be given to the value of the portion of the tract containing the lot subject to rollback tax. The taxpayers' expert did not separately value that portion of the tract. He did not consider the location, frontage or topography of the homesite lot but, having arrived at a value for the entire tract, concluded that the non-farmland value of the homesite lot was the same $2,000 per acre used as the valuation basis for the entire tract. The valuation method employed for the lots subject to rollback tax did not accord with the statutory valuation standard and must be rejected.
The homesite approach to valuation is an accepted valuation approach to determine fair market value of undeveloped land. It may properly be used by an assessor as part of the valuation process. I Real Property Appraisal Manual for New Jersey Assessors (3 ed. 1978), at 59. Every valuation process *633 should include a consideration of all applicable valuation approaches with the selection of the most appropriate approach dependent upon the judgment of the appraiser. The court finds that the homesite valuation approach is a proper approach for the valuation of rural farmland in the process of development. Inasmuch as this is a proper method and was the method used to value all similar property in the municipality, the court finds that this method was properly used in allocating the assessment on the entire parcel to the portion of the parcel undergoing the change in use. When non-farmland valuation initially is based upon the potential for homesite development, the portion of the property subject to rollback tax is properly taxed at the value of its potential use as a homesite. This will result in the imposition of a rollback tax on the portion undergoing the change, in an amount equal to the tax which would have been imposed on that portion had the farmland assessment not been applied to said portion.
The presumption of correctness not having been met by competent evidence, the assessment of the rollback tax for the two years prior to the year of change in use is affirmed.

II.
The assessor testified that his valuation for the year of change in use was as of the date of change in use, not the general assessing date (October 1 of the pretax year). Therefore, he valued each lot without deducting the 25% vacancy factor, because at the time of the change in use the lots had been subdivided. The assessor's valuation as of the date of change in use does not accord with the requirement of N.J.S.A. 54:4-23.8. The general legislative purpose in providing for a rollback tax is to require property receiving the benefit of farmland assessment to pay the difference between the farmland assessment tax and the tax that would have been paid had the land been valued and assessed as other land in the taxing district in the current year and in the two tax years immediately *634 preceding. If these lots had not been assessed as farmland they would have been valued as of the assessing date (October 1 of the pretax year). N.J.S.A. 54:4-23. A change in land value occurring after the assessing date is not reflected in other assessments in the municipality until the following year.[1]
There is no indication in the Farmland Assessment Act of any intention to use a different assessing date for the year of change in use from the assessing date used for the two prior rollback years. The use of October 1 of the preceding year as the valuation date for all three years satisfies the requirement to impose a rollback tax based upon the tax that would have been paid had the land been valued, assessed and taxed as other land in the taxing district.
The court therefore concludes that the proper rollback assessment for the year of change in use is based upon a valuation and assessment of the property as of the assessing date, not as of the date of change in use. The discount factor applied for the two prior rollback years should not have been eliminated for the year of change in use.

III.
The taxpayers contend that discrimination existed for the years 1976, 1977 and 1978 and seek to have the Director's average ratio for those years applied to the value of the property in determining the assessment for rollback tax purposes. N.J.S.A. 54:4-23.8(b) provides that in the calculation of the rollback tax the county percentage level pursuant to N.J.S.A. 54:4-2.27 (§ 3, Chapter 51, Laws of 1960 as amended) shall be applied. The county percentage level in Hunterdon County pursuant to said statute is 100%. Division of Taxation Ann.Rep. *635 (1979) at 28. The only proof of value by the taxpayers is that of $2,000 per acre for the entire tract. There was no separate testimony by the taxpayers of the value of the homesite lots subject to rollback tax for the assessing dates in question. There was no proof of the level or ratio of assessment applicable in the municipality as of any of the assessing dates in question other than the assertion of ratios stated to be the ratios of the Director of the Division of Taxation. The lack of proof of non-farmland value of the homesites and the lack of proof of the level of assessment or ratio applicable in the municipality for the assessing dates in question leaves the court with insufficient evidence upon which to base discrimination relief. Further, the appraisal expert for the taxpayer conceded that the non-farmland assessments represented the true value of the lots subject to rollback assessment after applying the ratio which represented the level of assessment in the municipality. The court makes no decision as to whether in a proper case discrimination relief may be granted in rollback tax cases by applying a ratio of assessment to the proven non-farmland value in step one of the calculation, either on a constitutional basis or pursuant to N.J.S.A. 54:2-40.4.

Conclusion
The assessment of the rollback tax for the two years prior to the year of change in use for each of the five lots is affirmed. The court finds that the 25% discount factor must be applied to the year of change in use because the lots must be valued as of October 1 of the pretax year. The court further finds that there is insufficient proof of discrimination and therefore no ratio of assessment can be applied to the actual assessment of the property for the years in question.
The Clerk of the Court is directed to enter judgment as follows:

*636
 Block 5
 Lot 3-1
 Regular Assessment Difference between
 Assessment & County Board Tax Court Tax Court Judgment and
 as Farmland Action Judgment Assessment as Farmland
1976 $516 $14,000 $7,800 $7,284
1975 $516 $ 7,800 $7,800 $7,284
1974 $516 $ 7,800 $7,800 $7,284
 Block 4
 Lot 5-2
 Regular Assessment Difference between
 Assessment & County Board Tax Court Tax Court Judgment and
 as Farmland Action Judgment Assessment as Farmland
1976 $467 $13,200 $7,800 $7,333
1975 $467 $ 7,800 $7,800 $7,333
1974 $467 $ 7,800 $7,800 $7,333
 Block 4
 Lot 5-3
 Regular Assessment Difference between
 Assessment & County Board Tax Court Tax Court Judgment and
 as Farmland Action Judgment Assessment as Farmland
1976 $466 $13,200 $7,800 $7,334
1975 $466 $ 7,800 $7,800 $7,334
1974 $466 $ 7,800 $7,800 $7,334
 Block 4
 Lot 5-4
 Regular Assessment Difference between
 Assessment & County Board Tax Court Tax Court Judgment and
 as Farmland Action Judgment Assessment as Farmland
1978 $454 $12,600 $9,450 $8,996
1977 $411 $ 9,450 $9,450 $9,039
1976 $411 $ 9,450 $9,450 $9,039
 Block 4
 Lot 5-5
 Regular Assessment Difference between
 Assessment & County Board Tax Court Tax Court Judgment and
 as Farmland Action Judgment Assessment as Farmland
1978 $440 $12,500 $9,375 $8,935
1977 $398 $ 9,375 $9,375 $8,977
1976 $398 $ 9,375 $9,375 $8,977

NOTES
[1] There are two exceptions to the general rule of valuation as of October 1 of the pretax year, N.J.S.A. 54:4-63.1 et seq. and N.J.S.A. 54:4-63.28. These provisions deal only with property newly placed upon the tax rolls with no intent to tax back years. The Farmland Assessment Act deals with land already on the tax rolls for the year of change and the two preceding years.