ANDREW, P.J.T.C.
This local property tax case presents a question under the rollback tax assessment provisions of N.J.S.A 54:4-23.8. The *235 parties, plaintiff, Calton Homes, Inc., and defendant, West Windsor Township, have asked this court to decide whether the Mercer County Board of Taxation followed an appropriate methodology in its calculation of rollback taxes for plaintiffs property for the tax years of 1991 and 1992.
This case has been submitted for decision by the parties on a stipulation of facts, supporting exhibits, the appraisal reports of the experts for the respective parties and briefs. At my request, because of the tangential constitutional issues presented, the Attorney General has participated in this proceeding by filing a brief expressing her view of the correct interpretation of the relevant legislative and constitutional provisions.
The property at issue is known and designated as Block 21, Lot 22 on the tax map of defendant, West Windsor Township. It is an irregularly shaped parcel of land consisting of 143.33 acres and is located in a R-2 residential district which, for the most part, permits development of single-family dwellings.
The record reveals that West Windsor Township implemented a district-wide revaluation for each of the tax years 1983 and 1993. The subject, however, was assessed as farmland pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 to -23.23, for the tax years of 1983 through 1993. In 1983, the farmland assessment was set at $58,200[1] and apparently that assessment was carried over each year until 1993 when the farmland assessment was increased to $73,300. Although the property was assessed as farmland in 1983, the appraisal firm performing the revaluation suggested that the fair market value of the subject was $1,171,816 which was a figure that was carried on the property record card pursuant to N.J.A.C. 18:12-4.8.[2]
*236 Plaintiff acquired the subject property on March 2, 1993 for $5,016,000 and is currently developing the property with the construction of single-family houses. Prior to plaintiffs acquisition, the West Windsor Township Planning Board on April 22, 1987, had granted preliminary and final subdivision approval to develop the property for residential purposes. Plaintiff devotes a large portion of its initial brief to point out that, while subdivision approvals had been granted as early as 1987, because of a sewer moratorium and a host of other problems related to sewage disposal systems, actual development of the subject was not feasible until April 15, 1993, when plaintiff filed its final subdivision map with the Mercer County Clerk’s office.
Shortly thereafter, on August 31, 1993, the West Windsor Township tax assessor filed a complaint with the Mercer County Board of Taxation seeking additional taxes, known as rollback taxes, for tax year 1993, the year in which the property was applied to a nonfarmland use, and the two immediately preceding years of 1991 and 1992 pursuant to N.J.S.A. 54:4-23.8 and -23.9.
At the hearing scheduled by the county board, apparently no one appeared on behalf of plaintiff and the county board adopted the assessable values recommended by the tax assessor. The county board judgment reveals the following:
1991 1992 1993
Full & Fair Value $5,016,000 $5,016,000 $5,016,000
x Chapter 123 average ratio 41.33% 41.33% 100%
= nonqualified tax-$2,073,100 $2,073,100 $5,016,000
able value
Assessment under the Farmland Assessment Act $ 58,200 $ 58,200 $ 73,300
Rollback Assess-$2,014,900 $2,014,900 $4,942,700
ment Tax Rate 4.27 4.67 2.23
Amount of Tax $ 86,036.23 94,095.83 $ 110,222.21
*237 As the chart reflects, the county board accepted a fair market value for each of the tax years at issue of $5,016,000, which was the purchase price paid by plaintiff on March 2, 1993 for the subject property. With respect to tax years 1991 and 1992 the board applied the chapter 123 average ratio to derive the nonfarmland qualified taxable value. However, while the county board applied a ratio of 41.33% for tax year 1991, the correct average ratio for West Windsor Township for 1991 was 42.33%. See Division of Taxation, Certification of Average Ratios and Common Level Ranges for use in the tax year 1991, Mercer County, West Windsor Township. If defendant’s position is correct in this case, this court is obligated, under N.J.S.A 54:l-35a., to apply the chapter 123 ratio promulgated by the Director of the Division of Taxation. See Murnick v. Asbury Park, 95 N.J. 452, 458, 471 A.2d 1196 (1984) (use of a ratio other than that declared by the Director of the Division of Taxation violates N.J.S.A 54:1-35a. and should be corrected under the plain error rule, R. 2:10-2). Since 1993 was a year in which the township implemented a district-wide revaluation, 100% of fair market value was the ratio applied for that year. See N.J.S.A. 54:3 — 22(f) and N.J.S.A 54:51A-6d.
Plaintiff subsequently filed a complaint with this court claiming that the rollback tax assessment for each of the years of 1991, 1992 and 1993 was incorrect because of an improper methodology employed by the board. During the course of this proceeding, however, plaintiff withdrew its claim with respect to the 1993 tax year, a year in which the township implemented a municipal-wide revaluation. Only the rollback tax assessments for tax years 1991 and 1992 remain at issue.
There is no dispute that the subject property was applied to a nonfarmland use in 1993, and therefore, rollback taxes are appropriate. The focus of the dispute is solely on the method of calculation of the rollback tax assessments.
Additionally, the parties have agreed as to the appropriate values to be employed based on whether the plaintiffs proffered *238 methodology is correct or that employed by the county board is correct. The stipulation of facts provides that, if I conclude that the county board’s method is correct, the fair market value of the subject property as of the pivotal assessment dates of October 1, 1990 for tax year 1991 and October 1, 1991 for tax year 1992 was $5,016,000. The parties have also agreed that the applicable average ratio to be applied, again, if the county board’s method is correct, is 41.33% for both tax years of 1991 and 1992. However, as I previously indicated, with regard to tax year 1991, I am obligated to apply the average ratio of 42.33% as promulgated by the Director of the Division of Taxation.
In essence, if I conclude that the county board’s method was correct, plaintiff concedes that the 1991 and 1992 rollback assessments and resulting taxes are correct. However, for tax year 1991, the rollback assessment and resulting taxes must be recalculated using an average ratio of 42.33%.[3]
If, however, the methodology offered by plaintiff is appropriate, the parties have agreed that the total nonfarmland qualified value for the subject property for rollback tax purposes is $1,289,000. This would produce a rollback tax assessment for each tax year of 1991 and 1992 of $1,230,800 after deducting the farmland qualified value of $58,200. The sum of $1,289,000 was selected by plaintiff because it represents the value recommended by the revaluation firm as the fair market value for the subject as of October 1,1982 for the 1983 revaluation year ($1,171,816) with, as suggested by plaintiffs appraisal expert, an additional ten percent added to account for entrepreneurial profit ($1,171,816 x 1.10 = $1,289,-000). Apparently, plaintiffs appraiser believed that an addition of entrepreneurial profit was justified based on the subdivision ap *239 provals that were obtained subsequent to 1983, but prior to the assessment dates at issue.[4]
Plaintiff claims that defendant’s tax assessor did not value the subject property for purposes of the rollback assessment at the same standard of value at which other property in the taxing district was being assessed. Plaintiff asserts that property in the taxing district for tax years 1991 and 1992 was generally assessed at those values arrived at by a revaluation firm during the revaluation implemented in 1983, eight years prior to the first rollback year in this case.
Plaintiff contends, however, that while other properties in the taxing district were being assessed at 1983 values, rollback assessments on the subject property for tax years 1991 and 1992 were based on values determined as of October 1, 1990 and October 1, 1991 respectively. See N.J.S.A 54:4-23. Plaintiff maintains that the county board’s practice of assessing property for rollback purposes at its current full and fair value: (1) is not in conformance with the rollback tax provisions of N.J.S.A. 54:4-23.8, (2) constitutes discrimination in contravention of the tax clause of the New Jersey Constitution, N.J. Const. art. VIII, § 1, f 1, and (3) is a violation of equal protection under both the New Jersey and United States Constitutions, U.S. Const, amend XIV, N.J. Const. art. I, U 5.
Additionally, plaintiff alleges that these rollback assessments constitute a case of egregious discrimination, and that, consequently, the discrimination provisions of chapter 123 of the Laws of 1973, N.J.SA 54:3-22 and :51A-6, do not provide an appropriate form of relief. Plaintiff seeks to have the rollback taxes reduced to the amount that plaintiff would have paid if the subject property had never been assessed as qualified farmland. Plaintiff alleges that this amount is the fair market value of the subject property as determined for tax year 1983 by the appraisal firm *240 that performed defendant’s revaluation for that year with an adjustment for entrepreneurial profit.
In response, both defendant taxing district and amicus, the Attorney General, maintain that the correct procedure for calculating rollback tax assessments was employed by the county board in.this case and that is to determine the fair market value of the property at issue as of the applicable assessment dates which is then adjusted by the chapter 123 formula to arrive at nonfarmland taxable value. See Schere v. Tp. of Freehold, 150 N.J.Super. 404, 409, 375 A.2d 1218 (App.Div.1977) (stating that ‘“full and fair value,’ as contained in [N.J.S.A 54:4-23.8], is the same as that traditionally applied in the assessment of property, i.e., the fair market value.”); Plushanski v. Union Tp., 176 N.J.Super. 626, 1 N.J.Tax 520, 528, 424 A.2d 473 (Tax 1980) (explaining that October 1 of each pretax year is the appropriate valuation date for purposes of calculating rollback taxes) and V.B.R. Assocs. v. Bernards Tp., 6 N.J.Tax 241, 245-46 (Tax 1984) (holding that under N.J.S.A 54:4-23.8(a), the chapter 123 ratio must be applied to the “full and fair value” of a property so that such property can be assessed “under the valuation standard applicable to other land in the taxing district”) (quoting N.J.S.A. 54:4.23.8(a)).
The dispute in this case arises from differing interpretations by the parties of certain relevant constitutional and statutory provisions relating to the assessment and taxation of real property in this State. To begin with, the original tax clause in the New Jersey Constitution of 1844, as amended in 1875, provided that “[property shall be assessed for taxes under general laws, and by uniform rules, according to its true value.” N.J. Const. of 1844 art. IV, § VII, 1112. As noted by our Supreme Court, the standard of true value was implemented by the Legislature in the adoption of N.J.S.A 54:4-23. See Gibraltar Corrugated Paper Co. v. North Bergen Tp., 20 N.J. 213, 218, 119 A.2d 135 (1955).
N.J.SA 54:4-23 directs tax assessors to determine full and fair value or true value as follows:
All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall ascertain the names of the owners of all real *241 property situate in his taxing district, and after examination and inquiry, determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract cm October 1 next preceding the date on which the assessor shall compkte his assessments____
[Emphasis added]
In 1947, when the people of this State adopted our current Constitution, the tax clause provided for uniformity in the following language:
Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.
[N.J. Const. art. VIII, § 1, H 1(a); emphasis added]
Although the new tax clause deleted the reference to true value in order to provide legislative discretion or flexibility with regard to the standard of value, there has been no change in the statutory assessment criterion of true value. N.J.S.A. 54:4-2.25 mandates that the standard of value at which all real property shall be assessed is the “true value” of such property. N.J.S.A. 54:4-23 still remains as the legislative prescription for assessment at true value. In this regard, our Supreme Court stated the following with regard to the effect that the adoption of the 1947 Constitution had upon N.J.S.A. 54:4-23:
The new Constitution worked no change in the statutory standard for it speaks only in terms of equality, leaving the denominator at which this is to be attained to legislative determination.
1947 Constitution, Art. VIII, Sec. I, par. 1 provides inter alia:
“Property shall be assessed for taxation under general laws and by uniform rules. All real property ... shall be assessed according to the same standard of value; »
The Legislature has not disturbed the provisions which call for true value assessment, but the dominant principle now is equality of treatment and burden, the standard employed is but the level on which the objective is to be realized.
[Gibraltar Corrugated Paper Co., supra, 20 N.J. at 218-19, 119 A.2d 135; emphasis added]
Thus, although N.J.S.A. 54:4-23 was enacted pursuant to the Constitution of 1844, the “full and fair value” standard expressed *242 in this statute is faithful to, and consistent with, the “same standard of value” requirement of our present Constitution.
Further, the legislative findings corresponding to the enactment of the “Revaluation Relief Act of 1993,” N.J.S.A. 54:1-35.39 to -35.48, reveal the Legislature’s view with regard to the “same standard of value” provision of the 1947 Constitution:
The Legislature finds and detemunes that:
a. Article VIII, Section I, paragraph 1 of the Constitution of the State of New Jersey requires that all real property in the State be assessed for taxation under the same standard of value, which the Legislature has defined as “true” or "market” value, and taxed at a uniform general tax rate within each taxing district;
[N.J.S.A. 54:1-35.40; emphasis added]
“Full and fair value,” as used in N.J.S.A 54:4-23, is the equivalent of “true value” or “market value,” Willingboro Chrysler/Plymouth, Inc. v. Edgewater Park Tp., 6 N.J.Tax 168, 176 (Tax 1983) (citing Newark v. West Milford Tp., 9 N.J. 295, 303, 88 A.2d 211 (1952)), and, thus, synonymous with the “same standard of value” requirement of the New Jersey Constitution. See N.J. Const. art. VIII, § 1,111(a).
Moreover, N.J.S.A 54:4-23 requires the assessor to value real property as of October 1 of the pretax year. See Irvington v. 1125-1127 Clinton Ave. Assocs., 5 N.J.Tax 420, 429 (Tax 1983) (stating that N.J.S.A 54:4-23 “directs the assessor to value real property as though it were sold pursuant to private contract on the assessing date.”); Genola Ventures-Shrewsbury v. Shrewsbury Bor., 2 N.J.Tax 541, 551 (Tax 1981) (stating that, in a local property tax proceeding, the court is “seeking to find the true value of the property, specifically, the price a hypothetical willing buyer would pay a hypothetical willing seller on October 1 of the pretax year.”); Atlantic County New School, Inc. v. Pleasantville, 2 N.J.Tax 192, 196 (Tax 1981) (stating that “questions of exemption or valuation are determined as of [October 1 of the pretax year] unless the Legislature has specifically provided otherwise.”) Thus, under the plain language of N.J.S.A. 54:4-23, and pursuant to N.J. Const, art. VIII, § 1, H 1(a), the “standard of value” at *243 which property is assessed is its “full and fair value” as of October 1 of the pretax year.
Paragraph 1(b) of N.J. Const, art. VIII, § 1 provides an exception to the requirement that all property be assessed “according to the same standard of value.” N.J. Const. art. VIII, § 1, 111(b) states in relevant part as follows:
The Legislature shall enact laws to provide that the value of land, not less than 5 acres in area, which is determined by the assessing officer of the taxing jurisdiction to be actively devoted to agricultural or horticultural use and to have been so devoted for at least the 2 successive years immediately preceding the tax year in issue, shall, for local tax purposes, on application of the owner, be that value which such land has for agricultural or horticultural use.
In the event that property receiving such preferential assessment is applied to a nonagrieultural or nonhorticultural use, the constitutional exception provides for a recapture of local property taxes as follows:
Any such laws shall provide that when land which has been valued in this manner for local tax purposes is applied to a use other than for agriculture or horticulture it shall be subject to additional taxes in the amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued and assessed as otherwise provided in this Constitution, in the current year and in such of the tax years immediately preceding, not in excess of 2 such years in which the land was valued as herein authorized.
[N.J. Const., art. VIII, § 1,111(b); emphasis added]
Thus, N.J. Const. art. VIII, § 1, H 1(b) explicitly authorizes rollback taxes once farmland qualified property is applied to a nonagricultural or nonhorticultural use. The amount of additional or rollback tax is equal to the difference between the tax based on the value of the property for agricultural or horticultural use and the amount of tax “that would have been paid or payable had the land been valued and assessed as otherwise provided in this Constitution.”
The Legislature codified the constitutional directive requiring the imposition of rollback taxes at N.J.S.A 54:4-23.8. This section is entitled “Rollback taxes; determination of amounts,” and states in relevant part:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is to be applied to a use other *244 than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been, valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change of use) and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.
In determining the amounts of the roll-back taxes chargeable on the land which has undergone a change in use, the assessor shall for each of the roll-back tax years involved, ascertain:
(a) The full and fair value of such land under the valuation standard applicable to other land in the taxing district;
(b) The amount of the land assessment for the particular tax year by multiplying such full and fair value by the county percentage level, as determined by the county board of taxation in accordance with section 3 of P.L.1960, chapter 51 (C. 54:4-2.27);
(c) The amount of the additional assessment on the land for the particular tax year by deducting the amount of the actual assessment on the land for that year from the amount of the land assessment determined under (b) hereof; and
(d) The amount of roll-back tax for that tax year by multiplying the amount of the additional assessment determined under (c) hereof by the general property tax rate of the taxing district applicable for that tax year.
[Emphasis added]
See also N.J.A.C. 18:15-7.3 (containing substantially the same provisions as N.J.S.A 54:4-23.8 with regard to the computation of rollback taxes).
Plaintiff argues that, because the rollback tax assessments were based on the value of the subject property as of October 1, 1990 and October 1,1991, its property was not assessed according to the same “standard of value” at which other properties in the taxing district were assessed, in violation of N.J. Const. art. VIII, § 1, H 1(a).
Despite the fact that N.J.SA 54:4-23, in harmony -with N.J. Const, art. VIII, § 1, K 1(a), dictates that the “standard of value,” at which property must be assessed is its “full and fair value” as of October 1 of the pretax year, plaintiff argues that, in this case, rollback taxes should be calculated using values arrived at by a revaluation firm during the revaluation implemented in 1983 (which values were presumably fixed as of October 1, 1982) as the *245 “standard of value.” Plaintiffs argument is based, in part, on the language of N.J.S.A. 54:4-23.8(a) which requires that rollback taxes be determined based on the “valuation standard applicable to other land in the taxing district.” Plaintiff contends that the standard of value applicable to other land in the taxing district is that of the 1983 revaluation values or, as referred to by plaintiff, “base year” values. It is plaintiffs position that base year values are carried forward each year by the tax assessor, with certain exceptions, until the next district-wide revaluation. Thus, plaintiff maintains, in the present case, the values determined in the 1983 revaluation, or base year, should be the basis for calculating taxable value until the next revaluation or reassessment.
Plaintiffs argument is not convincing. As I have previously indicated, the tax clause in our Constitution and N.J.S.A. 54:4-23 require that nonfarmland qualified property be assessed at “full and fair value” as of October 1 of the pretax year. Any argument which suggests that the “standard of value” at which real property is assessed is anything other than “full and fair value” as of October 1 of the pretax year necessarily contravenes the legislative prescription for uniform assessment practices. As I have previously discussed, the valuation standard outlined in N.J.S.A 54:4-23 is in harmony with the “same standard of value” requirement of our Constitution. N.J. Const. art. VIII, § 1, U 1(a).
Plaintiff contends, however, that N.J.S.A 54:4-23.8 does not require that a property be assessed at its true or market value as of October 1 of the pertinent pretax year, but only that the property be assessed according to the “valuation standard applicable to other land in the taxing district.” Plaintiffs argument, again, is not persuasive. The portion of N.J.S.A. 54:4-23.8 which details the procedure for determining rollback taxes explicitly refers to the “full and fair value” standard found in N.J.SA 54:4-23. Additionally, N.J. Const. art. VIII, § 1, 111(b) requires that rollback taxes be assessed in an amount equal to the difference between taxes paid based on farmland value and the taxes that would have been payable “had the land been valued and assessed as otherwise provided in this Constitution____” (emphasis added). *246 As previously indicated, N.J. Const. art. VIII, § 1, If 1(a), by means of N.J.S.A. 54:4-23, requires property to be valued at its “full and fair value” as of October 1 of the pretax year. Thus, pursuant to the New Jersey Constitution, the reference in N.J.S.A 54:4-23.8 to the “valuation standard applicable to other land in the taxing district” must refer to “full and fair value” as of October 1 of the pretax year.
In further support of its position, plaintiffs expert compared assessable line items on the 1983 West Windsor Township tax list with those on the 1992 township tax list. Plaintiffs expert determined that of the 6498 items on the 1992 tax list, the total number of land value changes from the 1983 tax list was 221, or 3.4% of the total line items. The total number of all line item changes (land and improvements) was 689, or approximately 11% of the total line items. Thus, plaintiff contends that, for tax year 1992, the value of 89% of the line items was based on values established in the 1983 base year. Plaintiffs appraisal expert alleges that these line item changes were due in some cases to successful tax appeals, changes in the status of farmland qualified property, and the subdivision of property. Plaintiff argues that because of the minimal number of changes to those assessments originally set for the 1983 revaluation year, “the valuation standard applicable to other land in the taxing district” must be the 1983 revaluation values.
Again, plaintiffs argument is misplaced. The premise of plaintiffs argument is that uniformity in tax assessments was achieved in 1983 and that by referring to those assessments or recommended values even eight or nine years later will accomplish uniformity. First, there is nothing in the record to demonstrate that the 1983 revaluation achieved uniformity of assessment in West Windsor Township. Second, and more important, there is no proof in this case that, even if the 1983 revaluation produced uniformity in assessments, that uniformity continued with the passage of time. It cannot be denied that property values in a municipality do not remain at uniform levels over time because of the uneven effect of economic forces. See Appraisal Institute, The *247 Appraisal of Real Estate at 75 (stating that “[t]he date of a value estimate must be specified because the forces that influence real property value are constantly changing.”). Thus, it cannot be assumed that uniformity will be achieved if 1983 values are applied to valuation or assessment dates many years later.
Moreover, if plaintiffs argument were accepted there would be two allegedly acceptable “standards of value” depending on the number of changes that an assessor makes between revaluation years. If the assessor adjusted 51% of the assessments in the municipality between revaluations, which standard of value would plaintiff have this court apply? The argument could be made that the alleged 1983 revaluation standard should not be applied because the majority of property in the taxing district is allegedly assessed at full and fair value as of October 1 of the pretax year. Even more important, however, is that the tax clause in our Constitution does not permit more than one “standard of value.” See Switz v. Kingsley, 37 N.J. 566, 572, 182 A.2d 841 (1962) (“the Constitution of 1947 requires that whatever ‘standard of value’ is legislated, that ‘same’ standard shall be applied to all real property taxable for local government (i.e., municipal, county, or regional school districts)”).
Additionally, if plaintiffs position is to be accepted with regard to appeals of rollback tax assessments, it would have to be accepted with regard to all traditional tax appeals in order to satisfy the requirement of the tax clause that all real property be assessed and taxed “according to the same standard of value.” Thus, under plaintiffs interpretation of N.J.S.A. 54:4-23.8, evidence would have to be elicited in every local property tax appeal as to the standard of value applicable in a particular taxing district. Additionally, as line items continually change, so will the applicable standard of value. It is well established that statutes should not be construed “in a manner which leads to absurd or unreasonable results.” Reisman v. Great Am. Recreation, Inc., 266 N.J.Super. 87, 96, 628 A.2d 801 (App.Div.1993), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993) (quoting 534 Hawthorne Ave. Carp. v. Barnes, 204 N.J.Super. 144, 148, 497 A.2d 1265 (App.Div. *248 1985)). To interpret N.J.S.A. 54:4-23.8 in the manner suggested by plaintiff clearly leads to such results. Not only does the Constitution not permit it, but the Legislature could not have intended for a standard of valuation to be determined for every local property tax appeal.
Plaintiff notes that, pursuant to N.J.A.C. 18:12-4.8(a)(4) and (8)(iii), a revaluation firm is required to place, in addition to the subject property’s qualified "farmland value, its estimate of the property’s highest and best use or fair market value of qualified farmland on the corresponding “property record card.” The township’s revaluation firm did, in fact, record its estimate of the subject property’s highest and best use value on the property record card as of October 1, 1982 at $1,171,816. Plaintiff asserts that the purpose of N.J.AC. 18:12-4.8(a)(4) and (8)(iii) is to predetermine the property’s highest and best use value according to the same standard of value applied to other property in the taxing district, so that when rollback taxes are imposed under N.J.S.A 54:4-23.8, the assessor can merely go back to the property record card to ascertain the property’s highest and best use value. Plaintiff contends that such a procedure eliminates the dangers of hindsight and the difficulty in reconstructing the standard of value previously applied in the base year.
There are several problems with the approach suggested by plaintiff. Plaintiffs argument presupposes that the $1,171,816 highest and best use value arrived at by the revaluation firm and placed on the property record card actually represents the non-qualified fair market value of the subject property on October 1, 1982. Plaintiff, however, has provided no evidence to indicate that this is the case. Plaintiff simply assumes that $1,171,816 actually represented the full and fair value of the subject property as of October 1, 1982. Simply because that figure appears on the property record card does not mean that it is necessarily indicative of the property’s full and fair value as of October 1, 1982.
Additionally, had the subject property actually been assessed at $1,171,816 for the 1983 tax year or any subsequent year, both the municipality and the plaintiff would have been entitled to contest *249 that assessment by filing an appeal, pursuant to N.J.S.A. 54:3-21, within the time period prescribed by that statute. However, under plaintiffs analysis, there would be no opportunity to contest the base year value set by the revaluation firm, since plaintiff contends that this number is conclusive for purposes of determining rollback tax.
Plaintiff concedes that Plushanski v. Union Tp., supra, dictates that for puiposes of rollback taxes, the relevant assessing date for each rollback year is October 1 of the pretax year. 1 N.J.Tax at 528, 424 A.2d 473. However, plaintiff asserts that, in Plushanski, the Tax Court presupposed that a particular municipality would comply with N.J.S.A 54:4-23, and “determine the full and fair value of each parcel of real property” on an annual basis.
As defendant has aptly observed, however, there is nothing in Judge Lasser’s opinion in Plushanski that would support plaintiffs assumption. Instead, what is abundantly clear is that Judge Lasser held that “the standard of value mandated by N.J.S.A. 54:4-23 must be used on land subject to rollback tax,” Id. at 525, 424 A.2d 473, and “as of the assessing date (October 1 of the pretax year),” Id. at 527, 424 A. 2d 473. There is nothing in the statutory or decisional law which permits otherwise.
Plaintiff also argues that the practice of assessing rollback taxes based on the full and fair value of the subject property as of October 1 of the pretax year constitutes discrimination in violation of the uniformity clause of the New Jersey Constitution, N.J. Const. art. VIII, § 1,111(a), and the equal protection clauses of both the New Jersey and federal constitutions. See N.J. Const. art. 1,115; U.S. Const, amend. XIV, § 1. “Equality of treatment in sharing the duty to pay real estate taxes is a constitutional right.” Murnick v. Asbury Park, supra, 95 N.J. at 458, 471 A.2d 1196. However, mathematical perfection in taxation is neither obtainable nor required. Id. at 459, 471 A.2d 1196; In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 32, 166 A.2d 763 (1961). If the ratio of assessed value to true value of a particular property substantially exceeds the assessment ratio generally applied in a taxing district, the taxpayer is entitled to relief. *250 Mumick, supra, 95 N.J. at 458, 471 A.2d 1196; In re Appeals of Kents, supra, 34 N.J. at 33-34,166 A.2d 763.
The New Jersey Legislature enacted Laws 1973, chapter 123, N.J.S.A. 54:3-22, N.J.S.A 54:51A-6 and N.J.S.A 54:l-35a, (commonly known as “chapter 123”) to address the problem of discrimination in local property tax assessments. N.J.S.A. 54:1-35a, entitled “Definitions,” states as follows:
a. The “average ratio” of assessed to true value of real property for a taxing district for the purposes of -this, act shall mean that ratio promulgated by the Director of the Division of Taxation pursuant to P.L.1954, c. 86 (C. 54:1-35.1 et seq.), as of October 1 of the year preceding the tax year, as revised by the tax court.
b. The “common level range” for a taxing district is that range which is plus or minus 15% of the average ratio for the district.
N.J.S.A 54:51A-6, entitled “Judgment revising taxable value of property; reduction of value; applicability of section,” states in pertinent part:
a. Whenever the tax court is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property____
Pursuant to chapter 123, a taxpayer is not entitled to discrimination relief if the ratio of the assessed value to the true value of his or her property falls within the “common level range.”
In Murnick, supra, our Supreme Court held that chapter 123 establishes a rebuttable presumption of the common level of assessment within each municipality. 95 N.J. at 463, 471 A.2d 1196. In order
[t]o overcome the presumption that the chapter 123 ratio reflects the common level, the taxpayer must establish that application of the ratio would be “virtually confiscatory." As a practical matter, the presumption created by chapter 123 is so strong that it will be conclusive in all but the most egregious cases.
It is sufficient to note that a taxpayer’s right to relief should be determined in accordance with chapter 123 in all but the most extreme or severe circumstances. To that limited extent chapter 123 is not exclusive. Thus construed, we have no doubt that the statute is constitutional
[Ibid.; emphasis added; citations omitted]
See Township of West Milford v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990) (holding that reassessment of only those proper *251 ties which were the subject of a recent sale constituted “egregious discrimination,” which fell outside the scope of chapter 123).
In this case, the county board applied the average ratio prescribed by chapter 123 to the determined true value for the subject property in arriving at nonfarmland taxable value for each of the rollback tax years of 1991 and 1992.[5] Plaintiff maintains, however, that chapter 123 is not the appropriate relief in this case. It is plaintiffs position that this case, like Van Decker, presents an egregious case of discrimination in which chapter 123 does not establish “both the right to and measure of relief,” Murnick v. Asbury Park, supra, 95 N.J. at 455, 471 A.2d 1196, and therefore, the only appropriate remedy is to apply the 1983 revaluation or base year value as augmented by plaintiff with an entrepreneurial factor.
In Van Decker, supra, our Supreme Court condemned “the practice of reassessing only properties that were the subject of a recent sale while leaving undisturbed the appraised valuations of properties in the same class that have not been sold.” 120 N.J. at 357, 576 A.2d 881. Plaintiffs, in Van Decker, alleged that they had been intentionally discriminated against in that their property was assessed at current value, while other property in the same class had not been reassessed. Id. at 358, 576 A.2d 881. Consequently, they asserted that a greater tax burden was imposed on them than on other similarly situated property owners. Ibid. The township argued that there was no discrimination because plaintiffs assessment-to-value ratio fell within the chapter 123 “common level range.” Ibid. The supreme court agreed with plaintiffs, holding that the assessor’s practice constituted a “spot assessment” in violation of both the uniformity clause of the New Jersey Constitution and the federal equal protection clause. Id. at 362, 576 A.2d 881. The Court stated that “[t]his case presents an egregious case of discrimination, and as such, is one of the narrow few that falls *252 outside of the scope of Chapter 123.” Id. at 365, 576 A.2d 881 (emphasis added).
The Van Decker Court noted, however, that “it is arbitrary intentional discrimination that is unconstitutional,” and that “[a] municipality may revise assessments in years other than years of a municipal-wide revaluation for legitimate reasons.” Id. at 362, 576 A.2d 881. Such legitimate reasons include increased value as a result of new improvements, the addition of formerly exempt property, and the conversion of apartments to condominiums.[6] Ibid. There can be no question that the imposition of rollback taxes is a legitimate reason for revising an assessment. As previously discussed, the imposition of rollback taxes is required under the New Jersey Constitution, N.J. Const art. VIII, § 1, 111(b), and N.J.S.A 54:4-23.8. Plaintiff argues that the present case is nearly identical to the “welcome stranger” pattern of assessment found unconstitutional in Van Decker. This case, in my view, is simply not a Van Decker case. In Van Decker, there was no constitutional or statutory requirement directing the assessor to reassess those properties which were the subject of recent sales. In the present case, the assessor, in seeking a rollback tax assessment, properly followed the commands of N.J. Const art. VIII, § 1,111(b), and N.J.S.A 54:4-23.8.
*253 Plaintiff also asserts that chapter 123 is inapplicable because it does not apply to farmland rollback tax assessments made under N.J.S.A 54:4-23.8. Specifically, plaintiff notes that there is nothing in chapter 123 which indicates that it was intended to override N.J.S.A 54:4-23.8. In support of this position, plaintiff notes that sales of property assessed under the Farmland Assessment Act of 1964 are not considered in determining the chapter 123 ratio.[7] Plaintiff argues that in valuing property which qualifies for farmland assessment, only the value that such land has for agricultural and horticultural purposes, and not the “prospective value which such land has for sub-division or other non-agricultural or horticultural purposes” should be considered. N.J.AC. 18:15-4.2. Plaintiff also argues that all cases applying chapter 123 discrimination relief involved properties which were assessed at their fair market value, not at a qualified farmland value.
Plaintiffs argument in this regard makes no sense. As defendant points out, the value of the subject property for purposes of farmland assessment is not at issue. Rollback taxes are being assessed precisely because the property no longer qualifies for farmland assessment. Under N.J.S.A. 54:4-23.8, the property must be assessed at its “full and fair value,” not its farmland value. By plaintiffs own logic, because the property must be assessed at its highest and best use value, and not farmland value, chapter 123 does apply. Additionally, case law indicates that chapter 123 is applicable to rollback assessments. See V.B.R. Assocs., supra, 6 N.J.Tax at 243.
In V.B.R. Assocs., defendant-municipality argued against the application of a chapter 123 ratio to a rollback valuation. Id. at 244. While defendant agreed that failure to apply the chapter 123 *254 ratio to the rollback valuation would result in a higher assessment than if the property had been regularly assessed in the years at issue, defendant asserted that the additional amount was a penalty, as distinguished from a regular tax assessment. Id. at 244-45. The court, in holding chapter 123 applicable to rollback tax assessments stated:
If equality of assessments were not reflected in rollback tax assessments they would not be made “according to the same standard of value” as all other assessments in the taxing district. This result would be violative of the tax clause of the State Constitution, N.J. Const. (1947), Art. VIII, § I, ¶ 1(a)____ In the present situation subsection (a) of N.J.S.A. 54:4-23.8 is reasonably susceptible of a construction which encompasses discrimination relief. In fact, the discrimination issue would seem to be inseparable from the issue of valuation. Weyerhaeuser Co. v. Closter Bor., [190 N.J.Super. 528,464 A.2d 1156 (App.Div.1983) ].
[Id. at 245-46]
Plaintiff, however, asserts that this court’s holding in V.B.R. Assocs. is incorrect. Plaintiff alleges that, in V.B.R. Assocs., the court did not consider the relevant language of N.J.S.A 54:4-23.8, specifically, that “the valuation standard applicable to other land in the taxing district” be used, and that rollback taxes constitute “the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district.” As has been discussed previously in this opinion, however, and as required by the tax clause of the State Constitution, the standard of value applicable to other land in the taxing district is “full and fair value” as of October 1 of the pretax year. See N.J. Const. art. VIII, § 1,¶ 1(a); N.J.S.A 54:4-23. Consequently, “the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district,” must be based on “full and fair value” as of October 1 of the pretax year. The V.B.R. Assocs. decision is consistent with this reasoning, and was correctly decided. Moreover, the decision in V.B.R. Assocs. has now been the authoritative statement on this question for over eleven years and the Legislature has made no attempt to change it.
Plaintiff also attacks application of the chapter 123 ratio to rollback assessments by reference to the 1970 amendment, L.1970, *255 c. 243, § 2, to N.J.S.A. 54:4-23.8. Prior to this amendment, N.J.S.A. 54:4-23.8(b) read as follows:
(b) The amount of the land assessment for the particular tax year by multiplying such full and fair value by the average real property assessment ratio of the taxing district, as determined by the county board of taxation for the purposes of the county equalization table for such year, pursuant to sections 54:3-17 to 19 of the Revised Statutes____
[Emphasis added]
The 1970 amendment removed any reference to the “average real property assessment ratio of the taxing district,” and replaced it with the statute’s current language which dictates that the full and fair value of the property be multiplied by the “county percentage level.” See N.J.S.A. 54:4-2.27 (discussing the procedure for establishing the “county percentage level”). There is no legislative history which indicates the reason for this change.
Plaintiff submits that the reason for the 1970 amendment to N.J.S.A 54:4-23.8 was that application of the average ratio to the “base year” or revaluation year value would not “recapture” the deferred tax as intended by the Legislature and should, thus, not be applied. See Jackson Tp. v. Paolin, 181 N.J.Super. 293, 3 N.J.Tax 39, 437 A.2d 344 (Tax 1981) (referring to The Report of the Governor’s Farmland Assessment Committee, March 20, 1963, which characterized the then proposed rollback provision as “a tax deferral or recapture feature”). Plaintiffs position, however, assumes that the reference in N.J.S.A 54:4-23.8 to “full and fair value ... under the standard applicable to other land in the taxing district” means “base year value.” As I have previously indicated, there is no authority for this proposition. To the contrary, as explained previously, the tax clause of our State Constitution and N.J.S.A. 54:4-23 demonstrate that the standard of value is “full and fair value” as of October 1 of the pretax year.
Additionally, as the Attorney General points out in her brief, the 1970 amendment corrected an error inherent in N.J.S.A. 54:4-23.8, which resulted in twice adjusting the nonfarmland qualified value of a property to the common level. The “valuation standard” referred to in N.J.S.A 54:4-23.8(a) must, by necessity, include an adjustment to the common level of assessment. If this *256 were not the case, the particular property would clearly not be assessed using the same standard of value “applicable to other property in the taxing district.” Consequently, because the adjustment to the common level is already incorporated in the valuation standard set forth in N.J.S.A 54:4-23.8(a), there was no need to account for it in N.J.SA 54:4-23.8(b).
Further, at the time of the 1970 amendment to N.J.SA 54:4-23.8, many county boards had adopted county percentage levels of less than 100%. See 1970.:Annual Report of the Division of Taxation at 366 (indicating, in the Table of Aggregates, the county percentage levels utilized by the twenty-one county boards of taxation). By requiring that the county percentage level be applied to the “full and fair value” of property subject to rollback taxes under N.J.S.A 54:4-23.8, the Legislature ensured that such property would be assessed at the same level as other property in the taxing district. Thus, the 1970 amendment to N.J.S.A. 54:4-23.8 advanced the concepts of uniformity and equality in assessment between property assessed for purposes of rollback taxes and other property in the taxing district.
Plaintiffs discrimination argument is, in essence, an attempt to show that it has been discriminated against by reference to assessments of other properties in the taxing district. Its argument is that, since other properties in the township are assessed at 1983 values, or underassessed according to plaintiff, its assessment should be reduced to the same level of underassessment. Plaintiffs argument is not only not persuasive but is counterproductive.
First, use of comparable assessments is insufficient to sustain a claim of discrimination. Greenwald v. Metuchen, 1 N.J.Tax 228, 236 (Tax 1980). Further, Schere v. Tp. of Freehold, supra, states that N.J.S.A 54:4-23.8(a) “mandates a determination of the ‘full and fair value’ of the subject property, and that calculation has nothing to do with the assessment of other properties.” 150 N.J.Super. at 407, 375 A.2d 1218. Thus, it is of no consequence that other properties within West Windsor Township *257 may be assessed based on values determined in 1983. Second, plaintiffs argument is counterproductive because it seeks a reduction in its tax assessment to a level that is less than the common level of assessments in the township as reflected by the chapter 123 average ratio which is presumptively the common level in West Windsor Township. A reduction to the level urged by plaintiff would simply create an underassessment and unduly favor plaintiff at the expense of other property owners in the taxing district. See Greenwald, supra, 1 N.J.Tax at 233.
In support of its position that the 1983 revaluation or base year values should constitute the standard of value in West Windsor Township, plaintiffs expert computed the alleged coefficient of deviation[8] for nine sales of vacant land in West Windsor that occurred in 1991 and 1992. Plaintiffs expert calculated the coefficient of deviation at 13.63 and intended to demonstrate by this exercise that there was no uniformity of assessments with respect to vacant land, and therefore, an application of the chapter 123 average ratio to fair market value would not achieve substantial equality in the present case.
Plaintiffs proofs fall far short of the intended purpose. To begin with, there is no proof in this case that plaintiffs sales sample is of sufficient size to produce reasonable statistical results. See Sunshine Biscuits, Inc. v. Sayreville Bor., 4 N.J.Tax 486, 499-500 (Tax 1982) (plaintiffs statistician expressed the opinion that “30 sales” would constitute a sample of sufficient size to produce reasonable statistical results).
Second, the coefficient calculated by plaintiffs expert is incorrect. Based on the data supplied, the coefficient of deviation for the nine sales is 12.27 and not 13.63. In any event, a coefficient of deviation less than 15 is indicative of relative uniformity in assessment practice and demonstrates a common level. See New Jersey *258 State Div. of Taxation, Handbook for New Jersey Assessors § 801.31(1) (June, 1989).
Third, if the assessments of the nine properties are, indeed, based on a 1983 value standard as plaintiff contends, the alleged lack of uniformity is attributable to the lack of uniformity in the 1983 revaluation year values when measured against the fair market values of 1991 and 1992.
Plaintiff also argues that the “Rollback Tax Worksheet” allegedly utilized by the West Windsor Township tax assessor constitutes an administrative rule which required compliance with the rule-making procedures set forth in the Administrative Procedure Act, N.J.S.A 52:14B-1 to -15. First, it should be observed that there is no proof in this case that this worksheet was actually used by the tax assessor to calculate rollback assessments and taxes.
Second, it is not the tax assessor who imposes rollback tax assessments, rather it is the county board of taxation pursuant to N.J.S.A 54:4-23.9 and -63.12. Third, it is not necessary for this court to determine whether the rollback tax worksheet constitutes an administrative rule. Regardless of whether the tax assessor or the county board used the worksheet or whether the worksheet constitutes an administrative rule, the method employed when using the worksheet in the determination of a rollback tax assessment is in accordance with constitutional and statutory directives. See N.J. Const. art. VIII, § 1,¶1(b); N.J.S.A. 54:4-23.8.
Plaintiff also points out that the added assessment procedure detailed in the Handbook for New Jersey Assessors, §§ 902.22, 902.23, supports its argument that the 1983 base year or revaluation year value is the standard of value which should be utilized in determining the rollback tax assessments at issue in this matter. Specifically, § 902.23 of the Handbook for New Jersey Assessors advises that new improvements be appraised at their current value and converted to base year value through the use of a cost conversion factor. This argument is unpersuasive. There is nothing in the language of the statutes addressing added assessments, N.J.S.A. 54:4-63.2, -63.3, which indicate that a base *259 year value should be utilized for purposes of determining added assessments. Moreover, the procedure referred to by plaintiff addresses “added assessments” and not “rollback assessments.” The Handbook for New Jersey Assessors, states the following with regard to the calculation of rollback taxes:
The concept of full and fair value as contained in the statute is the same as that traditionally applied in the assessment of property, ie„ the fail' market value. Thus, in a district where assessments have not been annually maintained at true value, the subject property’s assessment should be initially determined at the fair market value for each October 1 pretax year the property is subject to roll-back taxes and then subjected to the common level range established each tax year pursuant to Section 5, Chapter 123, Laws of 1973).
[§ 504.62]
Thus, the very authority on which plaintiff relies makes clear that, for purposes of determining rollback taxes, the standard of value to be employed is full and fair value as of October 1 of the pretax year, and not some base year value. See also New Jersey State Div. of Taxation, Farmland Assessment Handbook (1990) at 11-7 (indicating that, for purposes of calculating rollback taxes, the standard of value is the fair market value as of October 1 of the pretax year, as adjusted pursuant to chapter 123).
The Handbook may provide inconsistent direction to tax assessors. If it does, this court has observed in the past that the Handbook for New Jersey Assessors is:
Issued by the Division of Taxation to assist assessors in carrying out their duties, [and] the handbook expresses the Division’s interpretation of current law [but] is subject to, rather than binding upon, judicial and legislative authority.
[Shein v. North Brunswick Tp., 9 N.J.Tax 1, 8 (Tax 1986); emphasis added]
In sum, the tax clause of the New Jersey Constitution, N.J. Const. art. VIII, § 1, 111(a), N.J.S.A. 54:4-23 and -23.8 require that rollback taxes be assessed based on the full and fair value of the subject property as of October 1 of the pertinent pretax year. This value is then adjusted by means of the chapter 123 average ratio to determine nonfarmland qualified taxable value. The fact that the assessor’s handbook suggests that the base year values be used in determining added assessments is of no consequence. Plaintiffs position that the value determined by the revaluation firm in a revaluation or base year should be the appropriate *260 standard of value cannot prevail. Accordingly, the Tax Court Administrator is directed to enter judgment modifying the rollback tax assessment for tax year 1991 to reflect application of the correct chapter 123 ratio and affirming the judgment of the Mercer County Board of Taxation with respect to tax years 1992 and 1993.

 The amount reflected on the property record card for the subject property is $58,238. I assume that the tax assessor employed the rounded number of $58,200 for tax assessment purposes.

 It is clear, however, that a revaluation firm’s appraisal, in and of itself, has absolutely no legal status. The revaluation firm's value estimate has legal significance only if it becomes an assessment. This is true because a revaluation *236 firm serves merely in an advisory capacity for its principal, the tax assessor. N.J.A.C. 18:12-4.8; J.H. Becker, Inc. v. Marlboro Tp., 82 N.J.Super. 519, 530, 198 A.2d 463 (App.Div.1964).

 Use of the correct average ratio will result in a nonqualified taxable value of $2,123,300 ($5,016,000 x 42.33%), a rollback assessment of $2,065,100 ($2,123,300 - $58,200 = $2,065,100), and a resulting tax of $88,179.77 ($2,065,100 x 4.27 tax rate) for tax year 1991.

 This addition of ten percent for entrepreneurial profit is obviously inconsistent with plaintiff's theory in this case inasmuch as plaintiff contends that the values suggested by the revaluation firm for tax year 1983 should be the "standard of value” to be applied and yet plaintiff offers a different value for rollback purposes in this case.

 As explained previously, the county board incorrectly applied an average ratio of 41.33%, for tax year 1991. The correct 1991 average ratio for West Windsor was 42.33%.

 Plaintiff devotes a large portion of its brief to demonstrate that there was no change in the "legal status” of the subject property which would justify a reassessment between revaluation years. Apparently, plaintiff seeks to avoid the holdings in Fourmost, Inc. v. Parsippany-Troy Hills Tp., 11 N.J.Tax 57 (Tax 1990), aff'd o.b. per curiam, 12 N.J.Tax 251 (App.Div.1991) and Schwam v. Cedar Grove Tp., 228 N.J.Super. 522, 550 A.2d 502 (App.Div.1988), certif. denied, 115 N.J. 76, 115 N.J. 77, 556 A.2d 1219 (1989), which permitted reassessments between revaluation years because of the change in legal status when individual properties were converted to multiple condominiums. What plaintiff fails to comprehend is that there need not be a change in legal status in this case because both the New Jersey Constitution and N.J.S.A. 54:4-23.8 unequivocally direct that a reassessment take place when farm qualified property is applied to a nonagricultural or nonhorticultural use. This is clearly a legitimate reason for the revision of an assessment, as explained in Van Decker, supra, 120 N.J. at 362, 576 A.2d 881, in a year other than the year of a municipal-wide revaluation.

 There is no logical method by which a rational comparison can be made between a sales price reflecting market value at highest and best use and an assessment reflecting an artificially low value for agricultural use. Thus, sales of qualified farmland cannot be used in the sales ratio studies that provide the basis for the chapter 123 average ratios. See Cranbury Tp. v. Middlesex County Bd. of Tax; 6 N.J.Tax 501, 511 (Tax 1984), aff'd o.b. per curiam, 7 N.J.Tax 667 (App.Div.1985).

 Coefficients of deviation are useful statistical tools in the measurement of uniformity of assessment practices. A high coefficient denotes lack of uniformity, whereas a low coefficient signifies reasonable equality of assessment. The coefficient is the average deviation from the average assessment ratio, expressed as a percentage of average assessment ratio.